FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

00 MAR 23  AM 11: 37
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| DUEL R. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV 99-PT-2874-E |
| | ) | |
| WAL-MART STORES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

ENTERED
MAR 23 2000

## MEMORANDUM OPINION

This cause comes to be heard on defendant Wal-Mart Stores, Inc.'s ("Wal-Mart" or "defendant") motion for summary judgment filed February 28, 2000. Plaintiff Duel R. Smith ("Smith" or "plaintiff") filed suit against Wal-Mart alleging negligence and wantonness in connection with Smith's slipping and falling in the Anniston, Alabama, Wal-Mart store.

### BACKGROUND

Smith and his girlfriend, Willie Sue Willis ("Willis"), went to the Anniston Wal-Mart store on December 4, 1998, at approximately 9:00 p.m. to purchase a shirt. See Smith Deposition at pp. 80, 87. They entered the store, proceeded to the men's clothing department, selected a shirt, and walked to the checkout area. See Smith Deposition at p.88. At the checkout area, Smith remembered that he needed some Christmas lights. See Smith Deposition at p. 88.

Smith and Willis left the checkout area, and walked down the main aisle toward the store Christmas light display. See Smith Deposition at pp. 90-91, 95-98. Because there were

1

merchandise displays in the center of the aisle, Smith and Willis walked to the left of the displays, in front of the health and beauty aids department. See Smith Deposition at pp. 91-92, 95, 100-101. As Smith walked towards the Christmas lights display, he was glancing ahead. See Smith Deposition at p. 105. Neither he nor Willis saw anything spilled on the floor prior to his fall. See Smith Deposition at p. 110. Smith estimated that he was 30 feet down the aisle when he fell. See Smith Deposition at p. 100. Smith testified in his deposition that he saw people walking away from him in the aisle he was in, and also saw people walking towards him, but did not see anyone else slip or fall. See Smith Deposition at pp. 104, 107, 108. At the time he fell, Smith was walking "in a hurry to get on out." Smith Deposition at p. 110. However, Willis testified in her deposition that they were walking at a normal pace. See Willis Deposition at p. 39.

After the fall, Smith had a clear gel on his right shirt sleeve. See Smith Deposition at p. 115. After he fell, he looked on the floor and saw a four inch round spill of wet gel, located approximately one inch from the display in the aisle. See Smith Deposition at pp. 116-118, 124. Smith did not see a container on the floor. See Smith Deposition at p. 117-118.

Smith testified that he saw foot prints in or around the gel that were approximately three feet in length and appeared to have been made by more than one person. See Smith Deposition at pp. 119, 124-127. Smith stated that he could not have seen the prints prior to his fall because the gel was clear in color and the prints were not clearly visible. See Smith Deposition at p. 128. Willis pointed out the tracks in the gel after he fell. See Smith Deposition at p. 131. However, Willis did not know whether Smith or herself made the tracks themselves. See Willis Deposition at pp. 52, 56. There were no shopping cart tracks in the gel. See Willis Deposition at pp. 50-51.

2

Willis did know how the gel got to be on the floor or how long it was on the floor. See Willis Deposition at p. 53.

Etalya Bivens ("Bivens") is a sales associate the Anniston, Alabama, Wal-Mart store. On December 4, 1998, she was working in the health and beauty aids department of the store. As a part of her duties as a sales associate, she walks up and down the aisles in the store assisting customers. As she walks the aisles, she checks the floors to be sure that there are no foreign substances on the floor and to make sure that the floor is clean, clear, and dry. See Bivens Affidavit.

On December 4, 1998, Bivens was walking one of the aisles in her department. She heard a Code White called over the store public address system to the main aisle in the health and beauty aids department. She immediately walked to the aisle where the Code White had been called. Bivens saw Smith on the floor. She saw a clear gel on the floor. Approximately five minutes prior to the Code White, Bivens had been inspecting the aisle where the incident occurred, and the aisle was clean, clear, and dry, and she saw no objects or substance, including gel, on the floor at that time. See Bivens Affidavit.

Bivens recalls that the gel was not dirty and did not contain any footprints or shopping cart tracks. She does recall that it was smeared where it appeared Smith's foot had traveled through it. There was no container on the floor at that time to indicate where the gel may have come from. See Bivens Affidavit.

## DISCUSSION

Summary judgment may be granted based upon facts developed during the administrative proceedings, the pleadings, discovery, and supplemental affidavits if together, they show that

there is no genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. Id. The non-moving party then bears the burden of showing that there are specific facts demonstrating that there is a genuine issue of fact for trial. Id. at 324. The trial court must resolve all reasonable doubts in favor of the non-moving party, but need not resolve all doubts in a similar fashion. Barnes v. Southwest Forest Indus., Inc., 814 F.2d 607, 609 (11th Cir. 1987).

The parties do not dispute the applicable standard for slip-and-fall actions:

> ...[A] storekeeper is under a duty to exercise reasonable care to provide and maintain reasonably safe premises for the use of his customers. However, the storekeeper is not an "insurer of the customer's safety," and is liable for injury only if he "negligently fails to use reasonable care in maintaining his premises in a reasonably safe condition." The plaintiff[] must prove that the injury was proximately caused by the negligence of [the defendant] or one of its servants or employees. Actual or constructive notice of the presence of the substance must be proven before [the defendant] can be held responsible for the injury. Furthermore, the plaintiff[] must prove (1) that the substance slipped upon had been on the floor a sufficient length of time to impute constructive notice to [the defendant]; or (2) that [the defendant] had actual notice that the substance was on the floor; or (3) that [the defendant] was delinquent in not discovering and removing the substance.

Maddox v. K-Mart Corp., 565 So.2d 14, 16 (Ala. 1990) (citing Cox v. Western Supermarkets, Inc., 557 So.2d 831 (Ala. 1989); Richardson v. Kroger Co., 521 So.2d 934, 935-36 (Ala. 1988); and Cash v. Winn-Dixie Montgomery Inc., 418 So.2d 874 (Ala. 1982)).

Wal-Mart argues that it did not have actual notice of the substance, nor constructive notice of the substance as an employee had walked the aisle of the incident just five minutes previously and saw no substance on the floor. Wal-Mart relies heavily on Hose v. Winn-Dixie,

4

658 So.2d 403 (Ala. 1995), a case which Wal-Mart contends is highly analogous to this case and should lead to this court's granting of its motion for summary judgment.

In <u>Hose</u>, a customer brought a slip and fall action against Winn-Dixie, a large store. Hose alleged that she slipped and fell on "a murky liquid substance," suffering injuries to her left knee and her back. Hose testified that "you could tell people had been walking in it," although she had no idea how long the liquid had been there, or how it got there. Winn-Dixie produced the affidavits of two store employees who testified that they had walked the aisle where Hose slipped and fell five to ten minutes prior to her fall, and that no substance or liquid was on the floor at that time. The Alabama Supreme Court, in affirming the trial court's granting of Winn-Dixie's motion for summary judgment, unanimously held that Winn-Dixie made a prima facie showing that it had had no notice, actual or constructive, of any liquid on the floor, and that Hose failed to present substantial evidence that Winn-Dixie knew, or should have known, before the accident, of the liquid on the floor, citing the testimony of Winn-Dixie's employees.

Smith agrees that Wal-Mart did not have actual notice of the substance. However, Smith argues that there is a genuine issue of material fact as to whether Wal-Mart had constructive notice of the substance, as evidenced by the footprints in or around the substance, and as to whether Wal-Mart was delinquent in not discovering the substance prior to Smith's fall. In support of this argument, Smith notes that although Wal-Mart has produced testimony from an employee to the point that she had checked the aisle five minutes prior to Smith's fall, Wal-Mart has failed to product any log or other work record to this point. Smith relies on <u>Winn-Dixie v. Godwin</u>, 349 So.2d 37 (Ala. 1977); <u>Garner v. Covington County</u>, 624 So.2d 1346 (Ala. 1993); and <u>Davison v. Mobile Infirmary</u>, 456 So.2d 14 (Ala. 1984). In his brief, Smith does not

5

mention or attempt to distinguish Hose.

In Godwin, an elderly woman slipped and fell in a Winn-Dixie store. Both Godwin and her husband testified that there appeared to be too much wax on the floor, causing Godwin's fall. The floor of the store had been waxed the night before. The Alabama Supreme Court concluded that the trial court correctly allowed the issue of negligence and causation to go to the jury as there was evidence of the store floor's highly waxed finish. This case is distinguishable as it involves a substance intentionally applied to the floor by the defendant store, not an unknown substance not applied to the floor by the defendant store.

Garner involved an automobile accident and a claim for negligent maintenance of a traffic intersection. Factually, Garner is easily distinguishable from the case at hand. In Garner, the Alabama Supreme Court affirmed the jury's judgments for the plaintiff where there was conflicting evidence regarding the plaintiff's knowledge of the stop sign at issue.

In Davison, a patient and her husband brought a medical malpractice action against a hospital and treating physician, alleging that while hospitalized, the patient was permanently blinded as a result of excessive accumulation of coated aspirin in her stomach. Like Garner, this case is easily distinguishable from the case at hand. The Alabama Supreme Court held that the trial court incorrectly granted the defendant's motion for directed verdict because the plaintiff had produced sufficient evidence to make out a prima facie case. The Court held that the trial court impermissibly decided a factual question based on its assessment of the credibility of the doctor's testimony.

In this case, viewing the facts in the light most favorable to the plaintiff, there were some footprints in or around the substance. Smith testified that he saw people in the aisle in front of

6

him prior to his fall, which could account for the prints. The substance was wet, indicating both a lack of time to dry and a recent spill. See, e.g., Maddox, 565 So.2d at 17 (length of time substance on floor may be inferred from nature and condition of substance); see also Vargo v. Warehouse Groceries Management, Inc., 529 So.2d 986 (Ala. 1988) ("Where the substance is dirty, crumpled, or mashed, or has some other characteristic that makes it reasonable to infer that it has been on the floor a long time, the defendant may be found to have a duty to discover and remove it."); O. D. Cash, v. Minn-Dixie Montgomery, Inc., 418 So.2d 874, 876 (Ala. 1982) ("There is no evidence in the record whatsoever that the defendant knew the can was on the floor or that the can had been on the floor for such an inordinate length of time as to impute constructive notice. For aught that appears, the can may be been dropped on the floor by another customer only minutes before the plaintiff fell."); S. H. Kress & Co. v. Thompson, 103 So.2d 171, 175 (Ala. 1957) (floor where plaintiff fell inspected frequently by a porter, but "[o]bviously, the porter cannot be on all parts of the first floor at one and the same time."). The testimony of the employee is uncontroverted, that she checked the aisle five minutes previously and saw no substance on the floor. This court knows of no authority and plaintiff cites to none, mandating production of any log or work record. Testimony from employees is commonly relied on by the Alabama Supreme Court. This court agrees with the defendant in that the Hose case is highly analogous. Viewing the facts in a light most favorable to the plaintiff, there is no evidence indicating that the gel had been on the floor for a sufficient length of time to impute constructive notice to Wal-Mart, or that Wal-Mart was delinquent in not discovering and removing the gel prior to Smith's fall, nor is there evidence that Wal-Mart had actual notice of the substance. Mr. Smith's injuries are unfortunate, however, a "storekeeper is not an insurer of the customer's

safety." Maddox, 565 So.2d at 16 (internal quotation marks omitted).

Based on the foregoing, defendant's motion for summary judgment will be granted.

This 23rd day of March, 2000.

/s/ Robert B. Propst
ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

8